IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

UNITED STATES OF AMERICA,

v.  Criminal No. 3:22cr179 (DJN)

JONTE TOWLES,
Defendant.

**<u>MEMORANDUM OPINION</u>**

This matter comes before the Court on the Government's Objection ("Objection" (ECF No. 37)) to the Presentence Investigation Report ("PSR" (ECF No. 32)) in the sentencing of Defendant Jonte Towles ("Towles" or "Defendant"). The Objection challenged the PSR's failure to score Defendant's prior felony drug conviction in the Virginia state system, which would elevate Defendant's base offense level from 14, which the Probation Officer calculated pursuant to U.S.S.G. § 2K2.1(a)(6), to 20, pursuant to subsection (a)(4) of that same guideline. Because the Fourth Circuit explicitly determined in *United States v. Ward*, 972 F.3d 364, 368 (4th Cir. 2020), that a violation of the same statute at issue here, Va. Code § 18.2-248, constitutes a controlled substance offense under the Sentencing Guidelines, and because that decision has not been overruled by that court sitting *en banc* (despite a subsequent panel decision that appears to be inconsistent with the holding in *Ward*), the Court sustained the Government's Objection from the bench during Defendant's August 11, 2023 sentencing hearing. This Memorandum Opinion details the Court's rationale for that ruling.

## I. BACKGROUND

On February 27, 2023, Defendant pled guilty to one count of Possession of a Firearm by a Convicted Felon in violation of 18 U.S.C. § 922(g)(1). (PSR at 1.) In preparing the PSR, the Probation Officer determined that Defendant's base offense level equaled 14, pursuant to U.S.S.G. § 2K2.1(a)(6). (PSR ¶ 13.) After applying a two-point reduction for acceptance of responsibility, the Probation Officer then affixed Defendant's total offense level at 12. (PSR ¶¶ 13–21.) The Probation Officer further determined that Defendant's past convictions yielded a criminal history category of VI. (PSR ¶¶ 39–41.) Taken together, Defendant's total offense level and criminal history category resulted in a Guideline range of 30-37 months' incarceration. (PSR ¶¶ 88–89.)

The Government objected to the above calculation, arguing that the Probation Officer should have instead relied on U.S.S.G. § 2K2.1(a)(4), which provides for a base offense level of 20 when a defendant commits the instant offense after sustaining one felony conviction for a controlled substance offense. (Obj. to PSR at 1.) Specifically, the Government argued that Defendant's 2019 conviction under Va. Code § 18.2-248 constitutes a controlled substance offense, and that the Probation Officer erred in failing to treat it as such. (*Id.*) The Government maintained that (1) Defendant's total offense level should equal 17[1] and (2) the resulting Guideline range should run from 51-63 months' imprisonment. (*Id.* at 2.)

On July 12, 2023, the Court continued Defendant's sentencing hearing and ordered supplemental briefing on the Government's Objection (ECF No. 47), which the parties timely submitted (ECF Nos. 49, 50). During the rescheduled sentencing hearing on August 11, the

---

[1] The Government agreed to a three-point reduction for acceptance of responsibility. (Plea agreement at 3; ECF No. 27.) Consequently, with a base offense level of 20, the resulting total offense level would be 17.

2

Court sustained the Government's Objection and sentenced Defendant to 60 months' incarceration. The Court herein explains its rationale for sustaining the Government's Objection.

## II. ANALYSIS

For the reasons set forth below, the Court finds that Defendant's prior conviction under Va. Code § 18.2-248 constitutes a controlled substance offense under the Sentencing Guidelines and therefore gives rise to a base offense level of 20.

### A. Legal Framework

#### 1. Context – The Sentencing Guidelines, *Ward* and *Campbell*

The Government raises its Objection pursuant to U.S.S.G. § 2K2.1(a)(4), which instructs the Court to set a defendant's base offense level at 20 if "the defendant committed any part of the instant offense subsequent to sustaining one felony conviction for either a crime of violence or a controlled substance offense." U.S.S.G. § 2K2.1(a)(4)(A). Section 4B1.2(b) then defines a "controlled substance offense" as:

> [A]n offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.

*Id.* Importantly, Application Note 1 to § 4B1.2(b) elaborates that controlled substance offenses "include the offenses of aiding and abetting, conspiring, and attempting to commit such offenses." *Id.*, appl. n.1.

In *Ward*, the Fourth Circuit examined the Virginia drug statute now at issue (albeit in the context of a challenge distinct from the one levied here) and concluded that "a conviction under § 18.2-248 is a 'controlled substance offense' under § 4B1.2(b)." 972 F.3d at 371. The Fourth Circuit has not revisited this element of its *Ward* holding.

3

However, when analyzing a prior West Virginia state drug conviction under a statute that reads strikingly similar to Va. Code § 18.2-248, the Fourth Circuit explained in a subsequent case, *United States v. Campbell*, that Application Note 1 proves inconsistent with the plain text of the Guidelines themselves, which "do[] not mention attempt offenses." 22 F.4th 438, 444 (4th Cir. 2022). Given that the text of § 4B1.2(b) controls over the Commentary, the *Campbell* panel concluded that the Guidelines' definition of "controlled substance offense" excludes attempt offenses. *Id.* at 446. And because the West Virginia statute at issue there criminalized the "attempted transfer" of a controlled substance, like the Virginia statute at issue here, the *Campbell* panel held that a conviction under that statute did not constitute a "controlled substance offense" and could not serve as the predicate to a career offender enhancement under § 4B1.1. *Id.* at 449.

This Court must now discern the impact of the *Campbell* decision, if any, on the validity of the Fourth Circuit's prior decision in *Ward*. For the reasons that follow, the Court concludes that *Ward* remains controlling precedent and that the *Campbell* decision constitutes an outlier, particularly in light of subsequent Fourth Circuit opinions issued in *United States v. Groves*, 65 F.4th 166 (4th Cir. 2023) (analyzing the federal drug statute), *United States v. Miller*, __ F.4th __, 2023 WL 4673739 (4th Cir. July 21, 2023) (analyzing the North Carolina state drug statute), and *United States v. Davis*, __ F.4th __, 2023 WL 4876392 (4th Cir. August 1, 2023) (analyzing the South Carolina state drug statute). In reaching this conclusion, the undersigned concurs with Senior United States District Judge Robert E. Payne in his recent decision in *United States v. Brown*, 2023 WL 4138244 (E.D. Va. June 22, 2023) (Payne, J.).

2. **The Basic Analytical Framework**

When determining whether an offense fits into the Guidelines' definition of a "controlled

4

substance offense," the Fourth Circuit employs the categorical approach.[2] *Ward*, 972 F.3d at 368. That is, without considering the defendant's specific conduct, the court asks whether "the offense of conviction . . . falls within the Guidelines' description of a 'controlled substance offense.'" *Id.* Under this approach, if the "'least culpable' conduct criminalized by the predicate offense statute does not qualify as a 'controlled substance offense,' the prior conviction cannot support a[n] . . . enhancement." *Campbell*, 22 F.4th at 441 (quoting *United States v. King*, 673 F.3d 274, 278 (4th Cir. 2012)). In other words, if the scope of the conduct criminalized by the predicate offense statute exceeds the scope of the Guidelines' definition, the prior conviction cannot qualify as a controlled substance offense.

Here, the statute at issue, Va. Code § 18.2-248, makes it "unlawful for any person to manufacture, sell, give, distribute, or possess with intent to . . . distribute a controlled substance .

---

[2] It remains unclear how the divisibility of the predicate offense statute should play into the Court's approach in this case. Before *Ward*, the Fourth Circuit treated the divisibility analysis as a threshold matter that courts must take up to choose between the categorical approach and the modified categorical approach. *United States v. Allred*, 942 F.3d 641, 649 (4th Cir. 2019). Under that framework, the court first must determine whether the statute underlying the Defendant's prior conviction is divisible or indivisible; that is, whether or not the statute "sets forth alternative elements," thereby creating several "distinct crimes." *Id.* at 648 (quoting *United States v. Gardner*, 823 F.3d 793, 802 (4th Cir. 2016)). If the statute proves divisible, the court applies the modified categorical approach, which entails a review of a "limited class of documents . . . to determine what crime, with what elements, a defendant was convicted of." *Descamps v. United States*, 570 U.S. 254, 257 (2013). Upon determining the elements of the specific underlying conviction, the court *then* moves to the categorical approach and evaluates whether "those elements match the federal definition[]" of "controlled substance offense." *Cucalon v. Barr*, 958 F.3d 245, 250 (4th Cir. 2020). For indivisible statutes, on the other hand, the court applies the categorical approach at the outset. *Allred*, 942 F.3d at 647.

In *Cucalon v. Barr*, the Fourth Circuit held that Va. Code § 18.2-248 proved divisible by substance and therefore applied the modified categorical approach. 958 F.3d at 251, 253. Nevertheless, *Ward* (and subsequent Fourth Circuit cases citing *Ward*) sidestepped this settled framework and proceeded directly with the categorical approach, although Judge Gregory's concurring opinion followed the *Cucalon* framework. *Ward*, 972 F.3d at 375. Because *Ward* speaks directly to both Va. Code § 18.2-248 and Section 4B1.2(b) of the Guidelines, the Court will follow its framework and proceed directly with the categorical approach.

5

. . ." Va. Code § 18.2-248(A). Virginia law then defines "distribute" as "to deliver other than by administering or dispensing a controlled substance," and defines "deliver" as "the actual constructive, or attempted transfer [of a controlled substance]." Va. Code § 54.1-3401. Defendant relies on this nested language — that is, "attempted transfer" — to argue that the Virginia statute criminalizes attempt offenses and therefore exceeds the scope of the Guidelines' definition of "controlled substance offense." (Def.'s Suppl. Mem. (ECF No. 49) at 2.) For its part, the Government argues that by criminalizing "attempted transfers" of a controlled substance, § 18.2-248 merely criminalizes the completed offense of possession with intent to distribute, therefore falling squarely within the Guidelines' definition. (Obj. to PSR at 7-8.)

### 3. Detailed Look at Fourth Circuit Caselaw

To resolve the Government's Objection, the Court must decipher a series of ostensibly conflicting Fourth Circuit cases. First, as already noted, in *United States v. Ward*, the Fourth Circuit considered the very statute at issue here and, applying the categorical approach, held that a conviction under Va. Code § 18.2-248 constitutes a controlled substance offense under the Sentencing Guidelines. 972 F.3d at 374. Unlike subsequent Fourth Circuit cases, however, *Ward* did not consider the question of attempt offenses in its holding.

Less than two years later, the Fourth Circuit issued a seemingly irreconcilable decision in *United States v. Campbell*. There, the court considered a similar West Virginia drug distribution statute and held that a conviction under that statute did *not* constitute a controlled substance offense. *Campbell*, 22 F.4th at 449. The statute at issue in that suit, W. Va. Code § 60A-4-401(a), makes it "unlawful for any person to manufacture, deliver, or possess with intent to manufacture or deliver a controlled substance." W. Va. Code § 60A-4-401(a). The statute then defines "deliver" as the "actual, constructive, or attempted transfer . . ." of a

6

controlled substance. W. Va. Code § 60A-1-101(h). Thus, the West Virginia statute at issue in *Campbell* and the Virginia statute at issue here and in *Ward* appear nearly indistinguishable, the only difference being that the "attempted transfer" language lies one definitional reference deeper in the Virginia statute. Despite this similarity, and despite the court's prior holding in *Ward*, the *Campbell* court concluded that the West Virginia statute's "attempted transfer" language dictated that the "least culpable conduct criminalized by the . . . statute is an *attempt to deliver* a controlled substance." *Campbell*, 22 F.4th at 442 (emphasis added). Because the court had found that the Sentencing Guidelines' definition of "controlled substance offense" excluded attempt offenses, as discussed *supra*, the "least culpable conduct" criminalized by the West Virginia statute therefore fell outside that definition. *Id.* at 444. Thus, the defendant's prior conviction under W. Va. Code § 60A-4-401(a) could not serve as a predicate "controlled substance offense" undergirding a career offender enhancement. *Id.* at 449.

As Judge Payne recently recognized, the *Campbell* and *Ward* decisions appear to stand at odds with one another, because "[i]f the West Virginia statute covered inchoate crimes, it would seem that Virginia's statute, with the same wording, also would be an inchoate offense." *Brown*, 2023 WL 4138244, at *3.[3] However, in a trio of recent decisions, the Fourth Circuit has offered some clarification on this discrepancy, suggesting that *Ward* remains valid precedent and *Campbell* can only be viewed as an aberration.

In *United States v. Groves*, decided sixteen months after *Campbell*, the Fourth Circuit

---

[3] The *Campbell* decision runs counter to another prior Fourth Circuit decision in which the court applied the modified categorical approach and held that a prior conviction under W. Va. Code § 60A-4-401(a) "qualifies as a controlled substance offense." *United States v. Dozier*, 848 F.3d 180, 188 (4th Cir. 2017). The panel in *Campbell* justified its departure from *Dozier* with the assertion that "the question now before us was not at issue in that case." *Campbell*, 22 F.4th at 447.

7

considered whether the offense of aiding and abetting in the distribution of a controlled substance, in violation of 21 U.S.C. § 841(a)(1), constitutes a controlled substance offense. 65 F.4th at 169. The federal statute at issue in *Groves* makes it "unlawful for any person knowingly or intentionally ... to ... distribute ... a controlled substance." 21 U.S.C. § 841(a)(1). Then, the statute defines "distribute" as "to deliver (other than by administering or dispensing) a controlled substance." 21 U.S.C. § 802(11). Finally, the term "deliver" is defined as the "actual, constructive, or attempted transfer of a controlled substance." 21 U.S.C. § 802(8). Thus, the statutory language and structure at play in *Groves* mirrors that of Va. Code § 18.2-248 and W. Va. Code § 60A-4-401(a).

Departing from *Campbell*, the *Groves* panel concluded that § 841(a)(1) does not criminalize any attempt offenses, and the court therefore found that the defendant's prior conviction under that statute indeed constituted a controlled substance offense for purposes of the career offender enhancement. 65 F.4th at 174. The Fourth Circuit's conclusion as to the scope of § 841(a)(1)'s prohibitions sprouted from two considerations. *Id.* at 172–73. First, the court placed great weight on the federal scheme's separate criminalization of attempt offenses in 21 U.S.C. § 846. *Id.* at 173. "[C]onstruing § 841(a)(1) to criminalize an attempt offense," the *Groves* court wrote, "would render § 846 superfluous." *Id.* Because the court should "'construe statutes, where possible, so as to avoid rendering superfluous any parts thereof,'" the court found that the readily available interpretation of § 841(a)(1) which avoided surplusage — i.e., the interpretation in which § 841(a)(1) criminalized only completed offenses — proved superior to the interpretation advocated for by the defendant. *Id.* at 172 (quoting *United States v. Booker*, 994 F.3d 591, 596 (6th Cir. 2021)).

Second, the Fourth Circuit expressed skepticism at the proposition that § 841(a)(1)

8

criminalized attempt offenses where such an interpretation "would absurdly exclude § 841(a)(1) distribution offenses — quintessential federal drug trafficking crimes — from treatment as a 'controlled substance offense' in Guidelines calculations." *Id.* at 173. That interpretation proved absurd in part because Congress had "specifically instructed" the Sentencing Commission to include § 841 offenses among those covered by the § 4B1.2(b) definition of "controlled substance offense." *Id.* Again, given a readily available and equally defensible alternative interpretation, the court declined to find that "'the Sentencing Commission failed to comply with [Congress'] statutory command.'" *Id.* (quoting *Booker*, 994 F.3d at 596). In light of these compelling considerations of statutory interpretation, and in keeping with analogous decisions from the Third, Sixth and Eleventh Circuits, the Fourth Circuit therefore held that § 841(a)(1)'s prohibition of the "attempted transfer" of a controlled substance criminalized only a "completed delivery" and not any inchoate crimes. *Id.* Finally, addressing its apparent contradiction with *Campbell*, the *Groves* panel distinguished that case by observing that "the West Virginia scheme — at least as it was presented in *Campbell* — does not criminalize attempt offenses separately from completed drug distribution offenses," rendering it "materially different from the federal scheme."[4] *Id.* at 173.

*Groves* thus appears to instruct that the determinative question that the sentencing court must answer is whether there exists a separate statute for attempt crimes that would be rendered superfluous by finding that the relevant drug distribution statute encompasses attempt crimes. And in fact, the Fourth Circuit reiterated this point within the last month in two similar cases. In

---

[4] Of course, as *Groves* pointed out, the West Virginia statutory scheme *did* in fact criminalize attempt offenses separately, "but that point cannot impact [the court's] interpretation of § 841(a)(1)." *Groves*, 65 F.4th at 174. Thus, the *Campbell* analysis rested on an ostensibly flawed premise, leading to an incongruous decision that runs counter to other opinions that the Fourth Circuit has issued on this point.

*United States v. Davis*, the court found that an "attempted transfer" under South Carolina's drug distribution law constitutes a "completed distribution," because "South Carolina law codifies the offense of attempted distribution separately from a completed distribution offense." 2023 WL 4876392, at *11. Notably, the South Carolina statute discussed in *Davis* features essentially the same structure and language as the federal statute considered in *Groves* and the Virginia statute at issue here; that is, it defines "distribute" as "deliver," and then defines "deliver" as "attempted transfer." S.C. Code §§ 44-53-375(B), 44-53-110(17), 44-53- 110(10). Likewise, in *United States v. Miller*, the Fourth Circuit found that a conviction under North Carolina's drug distribution statute constitutes a controlled substance offense, given that North Carolina separately criminalizes attempt offenses, and because finding otherwise "would result in many state controlled-substance-trafficking laws *not* qualifying as controlled substance offenses." 2023 WL 4673749, at *10.

To summarize, although the statutory frameworks discussed in *Ward, Campbell, Groves, Davis* and *Miller* prove nearly identical, those cases have nonetheless yielded divergent outcomes, with *Campbell* serving as the oddity. First, *Ward* concluded that a conviction under Va. Code § 18.2-248 constitutes a controlled substance offense, without discussing whether the statute criminalizes attempt offenses. 972 F.3d at 374. Then, *Campbell* held that attempt crimes cannot constitute controlled substance offenses and found that the West Virginia statute's criminalization of "attempted transfer[s]" renders convictions under that provision outside the scope of U.S.S.G. § 4B1.2(b). 22 F.4th at 444. More recently, however, the Fourth Circuit has distanced itself from *Campbell*. In *Groves, Davis* and *Miller*, the court held that 21 U.S.C. § 841(a)(1), S.C. Code § 44-53-375(B), and N.C. Gen. Stat. § 90-95(a)(1), respectively, do not criminalize attempt crimes, despite containing the same "attempted transfer" language as the

10

West Virginia statute. *Davis*, 2023 WL 4876392, at *12; *Miller*, 2023 WL 4673749, at *10; *Groves*, 65 F.4th at 174. Most notably, *Groves* made clear that a predicate offense statute should not be construed as criminalizing attempt offenses when the statutory scheme contains a separate statute for attempt crimes — a statement that both *Davis* and *Miller* reinforced. *Davis*, 2023 WL 4876392, at *12; *Miller*, 2023 WL 4673749, at *10; *Groves*, 65 F.4th at 172. *Groves*, *Davis* and *Miller* then reconciled their holdings with *Campbell* by explaining that *Campbell* rested on the apparently faulty premise that West Virginia lacks a separate attempt statute. *Davis*, 2023 WL4876392, at *12–13; *Miller*, 2023 WL 4673749, at *10; *Groves*, 65 F.4th at 174.

### B. Defendant's Prior Conviction Under Va. Code § 18.2-248 Constitutes a Controlled Substance Offense

In light of the above discussion, the Court finds that Defendant's prior conviction under Va. Code § 18.2-248 constitutes a controlled substance offense. Several salient takeaways from the Fourth Circuit's recent caselaw inform this conclusion.

First, as noted *supra*, the Fourth Circuit already ruled on this exact issue in *Ward*, addressing the very statute at issue here and concluding that § 18.2-248 constitutes a "controlled substance offense" as defined in the Guidelines. 972 F.3d at 374. *Campbell*, upon which Defendant heavily relies, merely addressed a very similar statute. While Defendant plausibly reads *Campbell* as in conflict with *Ward*, the Fourth Circuit has yet to explicitly revisit the *Ward* holding. Because this Court must follow Fourth Circuit precedent as binding, *Ward* strongly counsels in favor of sustaining the Government's objection.

Second, to the extent the Court agrees with Defendant and reads *Ward* and *Campbell* to be in conflict, Fourth Circuit caselaw nonetheless dictates that the Court must follow the earlier of the two opinions. *McMellon v. United States*, 387 F.3d 329, 333 (4th Cir. 2004) (*en banc*) ("When published panel opinions are in direct conflict on a given issue, the earliest opinion

11

controls, unless the prior opinion has been overruled by an intervening opinion of this court sitting *en banc* or the Supreme Court."). In that same vein, one panel of the Fourth Circuit may not reverse another panel, as only the court sitting *en banc* may do so. *Id.* ("[A]s to conflicts between panel opinions, application of the basic rule that one panel cannot overrule another requires a panel to follow the earlier of the conflicting opinions"). This principle constitutes "black-letter Circuit law" in the Fourth Circuit. *United States v. Gibbs*, 905 F.3d 768, 770 (4th Cir. 2018) (Wynn, J., voting to vacate panel opinion).

Third, as *Groves* explained, and as *Davis* and *Miller* reaffirmed, the "attempted transfer" of a controlled substance constitutes a completed distribution rather than an attempt crime.[5] The Fourth Circuit drew this conclusion from the fact that the statutory schemes at issue in those cases contain separate statutes that criminalize attempted drug distribution. Virginia likewise possesses a separate statute that criminalizes attempted drug crimes, Va. Code § 18.2-257.

---

[5] This Court previously considered whether a conviction under § 18.2-248 constitutes a "serious drug offense" for purposes of the Armed Career Criminals Act ("ACCA"), 18 U.S.C. § 924(e), in *United States v. Morgan*, 2022 WL 4472771, at *2 (E.D. Va. Sept. 26, 2022). In that case, the Court accepted the defendant's uncontested assertion that § 18.2-248 encompasses attempt crimes by virtue of its "attempted transfer" language. *Id.* at *6. In light of *Davis*, *Miller* and *Groves*, the Court now finds it prudent to clarify that its statement that § 18.2-248 "punishes attempt crimes" can no longer hold true.

Yet, this clarification casts no doubt on *Morgan*'s holding. There, the Court held that the defendant's prior convictions fell within the ACCA's definition of "serious drug offenses" *despite* § 18.2-248's criminalization of attempt offenses. *Id.* To determine whether the defendant's prior state law conviction constituted a "serious drug offense," the Court compared the elements of § 18.2-248 with the elements of the ACCA's definition of "serious drug offense" and determined that a violation of § 18.2-248 "'necessarily entail[s] one of the types of conduct' set forth in the ACCA's definition." *Id.* at *3 (quoting *Shular v. United States*, 140 S. Ct. 779, 784 (2020)). Though the Court accepted the defendant's contention that the attempted transfer of a controlled substance constitutes the least culpable conduct punished by § 18.2-248, it also found that attempted transfer "necessarily involves" possession with intent to distribute — one of the types of conduct set forth in the ACCA's definition of "serious drug offense." *Id.* at *6-7. Consequently, the Court's passing statement that the Virginia statute includes attempt crimes had no impact on its analysis of whether that statute exceeded § 924(e)(2)(A)(ii) in scope.

12

Because reading § 18.2-248 as criminalizing attempt would render § 18.2-257 superfluous, it follows that the "attempted transfer" language in § 18.2-248 should be interpreted as criminalizing only the completed offense of possession with intent to distribute. When afforded this interpretation, a conviction under § 18.2-248 plainly falls within the ambit of a "controlled substance offense" as defined by the Guidelines.

Furthermore, the language and structure of the Virginia statute more closely align with that of the federal statute at issue in *Groves* and the South Carolina statute at issue in *Davis* than with the West Virginia statute at issue in *Campbell*. Much like 21 U.S.C. § 841(a)(1) and S.C. Code § 44-53-375(B), Va. Code § 18.2-248 uses the term "distribute," which then leads to "deliver," which then includes the term "attempted transfer." The West Virginia statute, on the other hand, uses the term "deliver" at the outset, which it then defines as an "attempted transfer" without any additional step. While this distinction may seem trivial on its face, it reinforces the Court's finding that *Groves* and *Davis* constitute more fitting analogues to the issue that the Court faces here than does *Campbell*.

Moreover, even if the Virginia statute followed the structure of the West Virginia statute, the Fourth Circuit's decision in *Miller* could be read as dispelling the notion that such similarity plays a meaningful role in the predicate offense analysis, as the North Carolina statute at issue in *Miller* employed the same one-level definitional jump from "deliver" to "attempted transfer" as the West Virginia statute at issue in *Campbell*. 2023 WL 4673749, at *9. Despite this similarity, the *Miller* panel held that a conviction under the relevant North Carolina drug distribution statute constitutes a "controlled substance offense." *Id.* at 10.

Finally, finding that § 18.2-248 includes attempt crimes would lead to the absurd outcome of excluding Virginia's primary drug distribution statute from treatment as a controlled

13

substance offense — a result that *Groves* explicitly warned against. *Groves*, 65 F.4th at 172. ("[C]onstruing § 841(a)(1) to criminalize an attempt offense . . . would absurdly exclude § 841(a)(1) distribution offenses — quintessential drug trafficking crimes — from treatment as a controlled substance offense.") The Court finds it unlikely that the Sentencing Commission drafted § 2K2.1(a)(4) and § 4B1.2(b) with the intention of excluding such a statute. Thus, to avoid defeating the purpose of § 2K2.1(a)(4), the Court holds that Defendant's conviction under Va. Code § 18.2-248 constitutes a controlled substance offense. *See United States v. Oliver*, 919 F.3d 393, 400 (6th Cir. 2019) (explaining that courts should not interpret the Guidelines in a manner that "produce[s] a result demonstrably at odds with the intentions of its drafters").

### III. CONCLUSION

For the foregoing reasons, the Court finds that Defendant's prior conviction under Va. Code § 18.2-248 constitutes a controlled substance offense. Accordingly, the Court has sustained the Government's Objection, (ECF No. 37), and held that Defendant's base offense level under the Sentencing Guidelines should be 20 before any reduction for acceptance of responsibility.

Let the Clerk file a copy of this Memorandum Opinion electronically and notify all counsel of record.

/s/
David J. Novak
United States District Judge

Richmond, Virginia
Date: August 15, 2023